26533, 26534.   GIORDANO et al. v. STUBBS et al.;
and vice versa.

HAWES, Justice. The appeal in this case is from the judgment of the Superior Court of DeKalb County denying the motion of the plaintiffs for a summary judgment against the defendant Stubbs for damages in the amount of $145,000, plus interest, and the cross appeal is from the denial of the defendant Stubbs' motion for a summary judgment in his favor as to all issues in the case. At issue is the validity of a sale by Stubbs, under power granted him in a deed to secure debt, of 35.52 acres of land located in Gwinnett County, Georgia. The undisputed facts show that Stubbs sold the land in question to one Donald E. Gaston on the 15th day of November, 1963, giving to Gaston a warranty deed therefor and receiving from Gaston a note and deed to secure debt in the amount of $30,000, payable interest only in semi-annual instalments of $900 each until November 14, 1969, at which time the principal balance with accrued interest thereon was due and payable. Gaston sold the property to a third party who, in turn, sold it to the plaintiffs, and the plaintiffs thereafter sold it to Bob E. L. Pope on the 31st day of July, 1969, for a recited consideration of ten dollars and other valuable consideration. As a part of the sale price from the plaintiffs to Pope, the latter gave to the plaintiffs a note and deed to secure debt in the amount of $163,500, and assumed the note and deed from Gaston to Stubbs in the amount of $30,000, as had each successive grantee prior to him. On November 1, 1969, Stubbs wrote to Joseph P. Giordano a letter advising him that, "Your note in the amount of $30,000.00, plus interest of $900.00 is due and payable Nov. 14, 1969. I have assigned this note to the Trust Co. of Ga. Please mail check in the amount of $30,900.00 to Trust Co. of Ga., East Atlanta Branch, 514 Flat Shoals Ave., S. E., Att: Mr. Harold Williams." On December 11, 1969, the indebtedness not having been paid, the attor-

ney for Stubbs wrote a letter to Gaston advising him of the non-payment of the note and notifying him of Stubbs' intention to institute legal proceedings to recover the same and to claim attorney's fees if the note should not be paid within ten days thereof. A copy of this letter was sent to Pope. On December 11, 1969, Stubbs secured the re-assignment of the note and deed to secure debt of Gaston to him from the Trust Company of Georgia. This re-assignment was filed for record on January 9, 1970, and recorded on January 13, 1970. Notice was published in the January 9, 16, 23 and 30th, 1970, issues of the Gwinnett Daily News that Stubbs, as attorney in fact for Donald E. Gaston under the deed to secure debt, would sell the property "by public outcry to the highest bidder for cash before the courthouse door in Gwinnett County, Georgia, within the legal hours of sale on the first Tuesday in February, 1970." On February 5, 1970, Joseph P. Giordano and Sam Giordano instituted their suit against Stubbs to enjoin the sale, to enjoin any proceeding to confirm the sale and to have the sale annulled, and for such other and further relief as might be deemed proper, lawful, equitable and just. Subsequently, the plaintiffs amended their complaint by adding Josephine Giordano as a party plaintiff, by adding the real estate firm of Summer-Minter & Associates, Inc., and Hugh Summer, one of the partners therein, as parties defendant and by adding demands for alternative relief in the form of a monetary judgment against Stubbs and against all the parties defendant on the basis of a claimed conspiracy to defraud. After receipt of interrogatories and answers thereto and after the filing of the depositions of the various parties and of witnesses, the judge of the superior court passed an order denying all motions for summary judgment filed by the plaintiffs and by the defendant Stubbs and by the defendants Summer-Minter & Associates, Inc., and Hugh Summer. That judgment was certified for immediate review.

1. Applying the laws of this State to the above facts, the

trial judge erred in not granting the motion for a summary judgment of the defendant Stubbs. The security deed from Gaston to Stubbs which contains the power of sale under which Stubbs proceeded, provides: "In case the debt hereby secured shall not be paid when it becomes due by maturity in due course or by reason of a default as herein provided, grantor hereby grants to grantee the following irrevocable power of attorney: To sell the said property at auction, at the usual place for conducting sales at the court house in the county where the land or any part thereof lies, in said State, to the highest bidder for cash, after advertising the time, terms and place of such sale once a week for four weeks immediately preceding such sale (but without regard to the number of days) in a newspaper published in the county where the land lies, or in the paper in which the sheriff's advertisements for such county are published, all other notice being hereby waived by grantor, and grantee (or any person on behalf of the grantee) may bid and purchase at such sale . . ." This deed constituted a contract between Gaston as grantor and Stubbs as grantee, and its provisions are controlling as to the rights of the parties and their privies. Stubbs complied with its terms. He advertised the sale in the Gwinnett Daily News for four weeks immediately preceding holding it. On the sale day the property was auctioned off from the steps of the Gwinnett County Courthouse as required by the deed. It was bid in by Stubbs, as he was specifically authorized to do by its terms. Giordano complains that he was not notified; however, the record shows otherwise. There is nothing in the security deed, nor in the laws of Georgia, which would require Stubbs to give actual notice that he was exercising the power of sale. Giordano, being in privity with the grantor in the deed to secure debt, was entitled to no other notice than the advertisement in accordance with the provisions of the security deed. The facts in the record disclose that Stubbs did actually notify his grantor, Gaston, and the record owner of the

property, Pope, prior to the time of the sale, that the debt was in default. Giordano's claim that he was entitled to notice from Stubbs before he exercised the power of sale to foreclose the deed is totally without legal merit. The U. S. Supreme Court, in upholding a Georgia case, *Scott v. Paisley,* 158 Ga. 876 (124 SE 726), observed: "In the absence of a specific provision to that effect, the holder of a mortgage or trust deed with power of sale, is not required to give notice of the exercise of the power to a subsequent purchaser or incumbrancer; and the validity of the sale is not affected by the fact that such notice is not given. . . 'The law imposes no duty upon a person holding a prior mortgage or deed of trust to notify one holding a similar subsequent or junior lien or incumbrance upon the same property of his intention to sell the property under his mortgage or deed of trust. All that is required of him is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith.'" Scott v. Paisley, 271 U. S. 632, 635 (46 SC 591, 70 LE2d 1123). See, to the same effect: *Garrett v. Crawford,* 128 Ga. 519, 523 (57 SE 792, 119 ASR 398, 11 AC 167); *King v. Walker,* 141 Ga. 63, 64 (80 SE 312); *Ellis v. Ellis,* 161 Ga. 360, 362 (130 SE 681); *Kent v. Hibernia Savings &c. Assn.,* 190 Ga. 764, 765 (10 SE2d 759); *West Lumber Co. v. Schnuck,* 204 Ga. 827, 834 (51 SE2d 644); *Massey v. National Homeowners Sales Service Corp.,* 225 Ga. 93, 98 (165 SE2d 854); *Turpin v. North American Acceptance Corp.,* 119 Ga. App. 212, 216 (166 SE2d 588). The sale in this case was advertised as provided in the security deed, and, also, as provided in *Code Ann.* § 67-1506. This was sufficient.

2. The Giordanos, appellants, and cross appellees, contend that the sale of the property by Stubbs was infected by several irregularities which would authorize a court of equity to set the same aside. None of these contentions is meritorious. In view of the ruling made in the preceding headnote, it was clearly immaterial that Stubbs had

written Joseph Giordano that payment of the last instalment on the note, together with the interest, should be made to the Trust Company of Georgia. Giordano did nothing about making payment and he was not entitled to rely on that informal notice when the property was foreclosed upon strictly in accordance with the terms of the deed to secure debt. He also contends that the record ownership of the instrument foreclosed was in the Trust Company of Georgia on the date the first of the four weekly advertisements was run, and that the transfer of the instrument from the Trust Company to Stubbs was not recorded until some four or five days after the date of the first advertisement. Assuming, but not deciding, that the failure of Stubbs to record the re-conveyance of the instrument to him prior to the sale, or prior to its advertisement, would have constituted such an irregularity as, when accompanied by "gross inadequacy of price," would have authorized a court of equity to set the sale aside, there was no such irregularity in this case. The record shows that Stubbs filed for record the reassignment of the instrument to him on the day the first advertisement ran in the newspaper. This clearly met the requirements of the law, for it is the date of filing, and not the date of recording, that fixes rights under the law with respect to instruments required to be recorded. *Code* § 67-2501. *Durrence v. Northern Nat. Bank,* 117 Ga. 385 (43 SE 726); *Merchants' & Mechanics' Bank v. Beard,* 162 Ga. 446, 455 (134 SE 107).

3. Inadequacy of price paid upon the sale of property under power will not of itself and standing alone be sufficient reason for setting aside the sale. It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside by a court of equity. *Smith v. Ga. Loan &c. Co.,* 114 Ga. 189 (39 SE 846); *Croft v. Sorrell,* 151 Ga. 92

(106 SE 108); *Massey v. National Homeowners Sales Service Corp.,* 225 Ga. 93, 99, supra. There being no such circumstances accompanying the sale, as we have held in the preceding headnotes, the gross inadequacy, if such there was, in the sale price would not, standing alone, authorize a court of equity to set the sale aside. Under all the circumstances in this case, the defendant Stubbs was entitled to a summary judgment and the court erred in refusing to grant his motion therefor.

4. The foregoing disposes of the entire case and renders moot the questions raised on the main appeal.

*Judgment reversed on the cross appeal; main appeal dismissed. All the Justices concur, except Felton, J., who dissents.*

ARGUED MAY 11, 1971—DECIDED SEPTEMBER 27, 1971.

*Haas, Holland, Freeman, Levison & Gibert, Hugh W. Gibert,* for appellants.

*Huie & Harland, Harry L. Cashin, Jr., Peek, Whaley, & Haldi, Glenville Haldi, Curtis R. Richardson,* for appellees.

FELTON, Justice, dissenting in part. I recognize the principle cited in Division 3 of the majority opinion, that, in order to set aside a sale of property under power, not only must the price realized be grossly inadequate, but also the sale must be accompanied by either fraud, mistake, misapprehension, surprise *or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price.* No argument should be necessary to show that the price realized, $35,000, was grossly inadequate for the property sold, evidence of the value of which ranged from approximately $100,000 to $215,000. If the inadequacy of price be great, it is of itself a strong circumstance to evidence fraud (*Parker v. Glenn,* 72 Ga. 637 (2)); that circumstance, taken in connection with others of a suspicious nature, may afford such a vehement presumption of fraud, as will authorize the court to set aside the conveyance. *Lasater v. Petty,* 220 Ga. 592, 594 (140 SE2d 864) and cit. There are many cases

from other jurisdictions to the effect that inadequacy of price great enough to shock the conscience of the court and raise a presumption or inference of fraud, may invalidate a sale. See 8 ALR 1001, 1004-1007 (III, IV) and cit. It is my position that the inadequacy of consideration here was great enough so that it alone was evidence of fraud sufficient to raise a jury issue and that, furthermore, the sale was accompanied by such "other circumstances" as are above mentioned.

It is true, as the majority opinion indicates, that Stubbs was authorized by the terms of the security deed to bid in the property himself, which he did through his agent. Apparently overlooked, however, has been the fact that Stubbs was acting in a dual role in the sale. He was not only the *buyer,* but also the *seller* under the irrevocable power of attorney granted him by the security deed, which constituted him an *agent* of the original grantor in the deed. That such agency was thereby created is indicated by the fact that "[t]he proper method to be employed by an attorney in fact in signing a deed for his principal is to sign the principal's name, with the additional statement that it is done by him (the agent) as attorney in fact, thus: 'John Smith, by his attorney in fact, William Hall.'" Powell on Actions for Land, § 218, p. 231. Stubbs later became also the agent of the Giordanos, subsequent grantors in privity with the original grantor. *Delray, Inc. v. Reddick,* 194 Ga. 676 (22 SE2d 599, 143 ALR 519).

"An agent is a fiduciary with respect to the matters within the scope of his agency. The very relation implies that the principal has reposed some trust or confidence in the agent, and the agent or employee is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer. The fiduciary relationship existing between an agent and his principal has been compared to that which arises upon the creation of a trust, and the rule requiring an agent to act with the utmost good faith and loyalty toward his principal or employer applies regardless of whether the agency is one coupled with an interest, or the compensation given the agent is small or nominal, or

that it is a gratuitous agency." 3 AmJur2d 580, Agency, § 199. "A power of sale is a trust." *Coleman v. Cabaniss,* 121 Ga. 281 (2) (48 SE 927). "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed *and shall be fairly exercised."* (Emphasis supplied.) *Code Ann.* § 37-607. "The relationship of principal and agent, being confidential and fiduciary in character, demands of the agent the utmost loyalty and good faith to his principal. Any breach of this good faith whereby the principal suffers any disadvantage and the agent reaps any benefit is a fraud of such nature as to preclude the agent from taking or retaining the benefit." *Johnson v. Sherrer,* 197 Ga. 392, 396 (29 SE2d 581); *Harrison v. Harrison,* 214 Ga. 393 (1) (105 SE2d 214), citing *Code* §§ 4-205 and 37-708; *Forlaw v. Augusta Naval Stores Co.,* 124 Ga. 261 (6) (52 SE 898). "The general morality of the law is higher than many good people suppose. . . The standard it has in view is not merely conscience, but enlightened conscience." *Barnes v. Mays,* 88 Ga. 696, 698 (16 SE 67); *Ga. Bapt. Orphans Home v. Moon,* 192 Ga. 81, 85 (14 SE2d 590). Although some of the decisions have applied these standards to the duty of plaintiffs, these great, immutable equitable principles, of necessity, are applicable equally to both parties. To further emphasize these standards, I cite again a portion of the opinion in Scott v. Paisley, 271 U. S. 632, 636, cited by the majority: "All that is required of him is to advertise and sell the property according to the terms of the instrument, *and that the sale be conducted in good faith."* (Emphasis supplied.)

What did the exercise of the utmost good faith, loyalty and honesty require of Stubbs in the instant case? What kind of consent does the law contemplate in reference to one's consent that his agent purchase at his own sale? Does it mean a free and untrammeled one or one contained in a deed to secure debt, where the grantor has no choice but to consent and the knowledge of which in many cases is wholly unknown and unconsciously given? It has been held that "[t]he trustee or mortgagee must use reasonable effort

to obtain a fair price for the property. It has been said that *he should obtain the greatest amount possible on foreclosure."* (Emphasis supplied.) 55 AmJur2d 663, Mortgages, § 731. "Under Georgia law, the grantee-seller under power of sale in a security deed has a duty to sell the property at its fair market value. *Langley v. Stone,* 112 Ga. App. 237, 239 (2) (144 SE2d 627)." *Buckhead &c. Bldg. v. Oxford &c. Cos.,* 115 Ga. App. 534, 536 (154 SE2d 760). The provision of *Code Ann.* § 67-1504 (Ga. L. 1935, p. 381), that the payment of the true market value of property sold under power is a condition precedent to confirmation of the sale, should apply equally to a situation where no confirmation is sought; nay, even more so, since in such event the sale would otherwise escape the watchful, protective scrutiny of a court of equity.

Stubbs had the choice of reducing his claim to judgment and letting a neutral and impartial officer sell the land securing his debt or of selling the security under his power of sale, in which latter event he would act as attorney in fact of the owner, owing Gaston good faith in exercising the power as such agent. If good faith had been exercised and the property produced its fair market value, there would have been an excess of the amount owed by Gaston, which Stubbs would have held in trust for those who later bought the land and assumed existing loans. These subsequent purchasers were in privity with Gaston and the good faith duty of Stubbs inured to the benefit of all later purchasers, who would have been entitled to such proceeds as were sufficient to cover their claims in the event the property brought its true value or an amount approximating it.

Stubbs' selling the property at somewhere between approximately one third and one sixth of its value is not good faith toward Gaston and his privies, especially since he himself bought it and would stand to benefit tremendously by such transaction. Stubbs might have exercised the requisite good faith under the circumstances, for example, by paying a fair price for the property if he bought it himself, or even by refusing to sell it under his power of sale if a

fair price could not be obtained, then having it sold either at another sale under his power or by judicial process. This failure to exercise good faith is sufficient, added to the gross inadequacy of the sale price, to render the sale void under the very decisions cited in the majority opinion. Another circumstance which easily could have contributed to bringing about the inadequacy of price, was the fact that the Trust Company was, at one time, a grantee of the security deed, then the instrument was transferred, perhaps unknown to subsequent privies of the parties thereto, back to Stubbs, who then foreclosed in his own name, which the grantors might not have realized to be that of the grantee of the deed. There is evidence that when the Trust Company of Georgia re-transferred the security deed to Stubbs, it did not receive payment for Stubbs' indebtedness which the deed secured, but that it renewed Stubbs' note. Under such circumstances, the bona fides of the re-transfer of the security deed to Stubbs becomes vital in this case for solution by a jury.

I am aware of *Code* § 37-104, and cases holding to the effect that, before a debtor can have equitable relief against a sale under power in a security deed, he must pay or tender the principal and interest due. See *Gilbert v. Carson,* 213 Ga. 387, 389 (99 SE2d 105) and cit. I do not believe that a tender was necessary in the present case, however; firstly, because, in addition to equitable relief, there was a demand for alternative relief in the form of a monetary judgment, which would be an adequate remedy. Secondly, "[i]n order for the plaintiff to prevail he must show that the circumstances complained of produced gross inadequacy of price, *and that he himself was free from fault.*" (Emphasis supplied.) *Croft v. Sorrell,* 151 Ga. 92, 96 (106 SE 108). Gaston and the other grantors have done nothing wrong or inequitable; hence, they are free from fault and in court with clean hands.

Even if a tender was required, moreover, "[d]elinquencies which have had no injurious consequences are held not to defeat a suit." 27 AmJur2d 674, Equity, § 138. The "clean

hands" maxim "should not be applied where the defendant has not been seriously harmed and the wrong complained of can be corrected." 27 AmJur2d 681, Equity, § 144. Certainly, it would be inequitable for the grantor to be required to have "cleaner hands" than the grantee. In this case, setting aside the sale under power would still leave Stubbs with all of his rights to exercise his rights to collect his debt, since only the sale, and not the security deed, would be set aside. In other words, the original contract would still be intact and not affected by the voiding of this particular sale under power. It is in this respect that the present action differs from those to rescind or set aside merely a contract wherein the only rights or values accruing to the opposite party are held thereunder, and would be forfeited were it not for a tender in the amount of such opposite party's rights under the contract.

The complaint raised a jury question as to whether the circumstances justified the relief sought. However, there was various opinion testimony as to the value of the property sold, based upon which summary judgment can never issue. *Ginn v. Morgan,* 225 Ga. 192 (2) (167 SE2d 393). For the latter reason, I would affirm the lower court's judgment denying the motions for summary judgment of all of the parties and I dissent from the majority opinion reversing the judgment denying Stubbs' motion for summary judgment.